1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                 No.  2:09-cr-0201 WBS AC

12                   Respondent,

13           v.                                 FINDINGS AND RECOMMENDATIONS

14   STEPHEN M. KRAUT,

15                   Petitioner.

16

17          Petitioner Stephen M. Kraut is a federal prisoner proceeding in pro per with a motion to

18   vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  ECF No. 82.  Petitioner states

19   five claims for relief, each of which alleges that trial counsel provided ineffective assistance in

20   violation of petitioner's Sixth Amendment rights.  Respondent has answered.  ECF Nos. 94, 95.

21   For the reasons set forth below, the undersigned recommends that the petition be dismissed for

22   lack of jurisdiction in light of petitioner's waiver of collateral review.

23                       I.       FACTUAL AND PROCEDURAL BACKGROUND

24      A.  The Charges

25          On April 30, 2009, petitioner was charged with bank fraud in a 15-count indictment.  ECF

26   No. 1.  The indictment alleged that petitioner, co-owner and general manager of a car dealership,

27   had obtained financing from First Hawaiian Bank for the purchase of vehicles from third-party

28

                                                1

1   vendors for resale.[1]  From 2005 through 2007, petitioner obtained credit advances from First

2   Hawaiian for the purchase of specific cars to add to the dealership's inventory, in which the bank

3   was to obtain an interest.  Petitioner did not in fact purchase many of the specified cars.  He

4   submitted falsified documents to First Hawaiian to make it look as though all the cars had been

5   purchased and "floored" (placed for sale).  Petitioner failed to pay down the line of credit.  He

6   submitted falsified financial statements to the bank to cover up his looming insolvency and ensure

7   continuing advances.  He also deceived First Hawaiian Bank auditors who conducted inventory

8   reviews.  By means of this vehicle flooring inventory scheme, petitioner fraudulently obtained

9   funds to benefit himself and his personal business ventures.  Id.

10   B. The Change of Plea

11   On January 14, 2011, he appeared before the Hon. Edward J. Garcia for a change of plea.

12   There was no plea agreement.  Following the Rule 11 colloquy and petitioner's plea of guilty, the

13   court was informed that the parties did not agree regarding the factual basis for the plea.  Counsel

14   for the government read a lengthy factual basis into the record, and defense counsel stated that

15   that many of the stated facts, which would affect sentencing, were disputed.  Counsel for the

16   government stated his belief that the facts in dispute were relevant to intent.  Judge Garcia set

17   aside the plea.  ECF No. 48 (minute order); ECF No. 95-9 (Transcript of Proceeding of 1/14/11).

18   On January 21, 2011, petitioner appeared again and entered a guilty plea to the indictment.

19   ECF No. 51.  The parties submitted a stipulated factual basis, which was signed by petitioner.

20   ECF No. 95-10 (Transcript of Proceedings of 1/21/11); ECF No. 95-1(Factual Basis filed

21   1/21/11).  This time the plea was accepted.

22   C. Sentencing Proceedings

23   Sentencing was continued multiple times.  The requests for continuance indicated that the

24   defense had received a draft presentence report which recommended a sentence of 188 months;

25   that the defense expert was encountering difficulties in accessing and analyzing records related to

26

27   [1]  The "Automobile Flooring and Security Agreement" was initially made with Citibank (West)
     FSB in 2005.  First Hawaiian subsequently assumed the contract and later executed an agreement
28   directly with petitioner.

1  loss calculation; and that the parties were exploring the possibility of stipulating to a loss amount.

2  ECF Nos. 51, 53, 55.  On October 13, 2011, the parties informed the court that they were "in the

3  final negotiations of a potential agreement regarding certain sentencing enhancements."  ECF No.

4  59.  On November 30, 2011, the parties jointly represented that they were pursuing "a potential

5  sentencing agreement" and were "close to resolving disputed issues."  ECF No. 61.  On January

6  6, 2012, the parties reported in another stipulation to continue sentencing that they "had reached a

7  tentative sentencing agreement" and were "providing information to probation to finalize the pre-

8  sentence report."  ECF No. 63.

9        On January 31, 2012, petitioner and his counsel signed the sentencing agreement, which

10  was submitted to the court at the sentencing hearing on March 9, 2012.[2]  ECF No. 65 at 1, 7.  The

11  agreement contained, in relevant part, the following stipulations regarding sentencing guidelines

12  variables:

13          2. Specific Offense Characteristics (Loss):  The amount of loss
             foreseeable to defendant Kraut is between $4,563,406 and
14           $6,453,479, resulting in the addition of 18 offense levels under
             §2B1.1(b)(1(J).
15
16          3. Specific Offense Characteristics (Sophisticated Means):   The
             parties agree that the offense involved the use of sophisticated
             means, so a two level increase applies under §2B1.1(b)(9)(C).
17
18          4. Role in the Offense Adjustment:  The government may argue for
             a four level upward adjustment for role in the offense under
19           §3B1.1(c).   The defendant agrees that a two-level upward
             adjustment is merited, but may oppose any further upward
             adjustment.
20
21          5. Abuse of Position of Trust:  The parties stipulate and agree that a
             two level increase applies under §3B1.3.
22  ECF No. 65 at 3.

23        The sentencing agreement further provided that "[t]he defendant agrees that the correct

24  applicable guideline offense level, after acceptance of responsibility, is no less than level 28, but

25  not more than level 30."  Id. at 4.  The government agreed that the highest applicable offense

26

27  ───────────────
    [2]  The docket refers to the Sentencing Agreement in error as a Plea Agreement.  ECF No. 65.  As
28  noted above, petitioner's change of plea had occurred more than a year prior, without a plea
    agreement.

1  level was 30, and agreed to recommend the low end of the resulting advisory guidelines range, 98

2  months.  Id.  Because petitioner had pled open to all counts, the agreement permitted the defense

3  to argue for a sentence below the applicable guidelines range.  Id.

4       The sentencing agreement contained the following waiver of appeal and collateral attack:

5       **Waiver of Appeal and Collateral Attack:**   The defendant
6       understands that the law gives him a right to appeal his conviction
        and sentence.   He agrees as part of this sentencing agreement,
7       however, to give up his right to appeal the conviction.  So long as
        his sentence is no longer than **121 months** (the high end of level
8       30), the defendant also agrees as part of this agreement to give up
        the right to appeal all aspects of the sentence imposed.  Defendant
9       specifically gives up his right to appeal any order of restitution the
        Court may impose.

10      Regardless of the sentence he receives, the defendant also gives up
11      any right he may have to bring a post-appeal attack on his
        conviction or his sentence.   He specifically agrees not to file a
12      motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction
        or sentence.

13  ECF No. 65 at 5-6. [3]

14       The PSR was consistent with the sentencing agreement regarding loss amount,

15  sophisticated means, and abuse of trust.  The probation offer recommended a four-level role

16  adjustment.  The resulting total offense level was 30, with a consequent advisory guideline range

17  of 97 to 121 months imprisonment.  The probation officer recommended a 121 month sentence.

18  Pursuant to the sentencing agreement, the government requested a sentence of 97 months.  A

19  defense sentencing memorandum urged the court not to impose more than 97 months, and did not

20  argue for a below-guidelines sentence.  ECF No. 64.  Judge Garcia imposed a sentence of 97

21  months, as well as restitution in the amount of $4,563,079.36.

22       At the end of the sentencing hearing, Judge Garcia advised petitioner of his appeal rights.

23  ECF No. 95-17 at 14.  The prosecutor noted for the record that appeal had been waived in the

24  sentencing agreement.  Id. at 15.  Judge Garcia noted, and the government acknowledged, that the

25  waiver had not been part of the Rule 11 proceeding.  Id.

26       On March 21, 2012, petitioner filed a notice of appeal.  The appeal was voluntarily

27

28  [3]  Citations to court documents refer to the page numbers assigned by the court's electronic
     docketing system and not those assigned by the parties.

1   dismissed on July 31, 2012.  ECF No. 81.

2        The instant application for relief was filed on March 14, 2013, asserting five claims of

3   ineffective assistance of counsel.  ECF No. 82.  The United States answered, asserting that

4   petitioner has waived collateral attack, and that all claims are subject to summary dismissal as

5   meritless.  ECF No. 94.

6                              II.        LEGAL STANDARDS

7        A.   Review Under 28 U.S.C. § 2255

8        28 U.S.C. § 2255 provides, in pertinent part: "A prisoner in custody under sentence of a

9   court established by Act of Congress claiming the right to be released upon the ground that the

10  sentence was imposed in violation of the Constitution or laws of the United States . . . may move

11  the court which imposed the sentence to vacate, set aside, or correct the sentence."  A section

12  2255 motion is the customary procedure for challenging the effectiveness of trial counsel under

13  the Sixth Amendment.  United States v. Houtchens, 926 F.2d 824, 828 (9th Cir. 1991).

14       To establish a constitutional violation based on ineffective assistance of counsel, a

15  petitioner must show (1) that counsel's representation fell below an objective standard of

16  reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

17  Washington, 466 U.S. 668, 692, 694 (1984).  Unreasonable advice regarding a favorable plea

18  offer constitutes deficient performance under Strickland.  See Lafler v. Cooper, 132 S.Ct. 1376,

19  1390 (2012).  To establish prejudice in this context, a petitioner must show a reasonable

20  probability that both he and the trial court would have accepted the forfeited plea bargain, and

21  that it would have resulted in a lesser sentence.  Id. at 1391.

22       If the court finds that petitioner's allegations are sufficient to support both prongs of the

23  Strickland test, "a district court must grant a hearing to determine the validity of a petition

24  brought under section 2255, '[u]nless the motions and the files and records of the case

25  conclusively show that the prisoner is entitled to no relief.'"  United States v. Blaylock, 20 F.3d

26  1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  In other words, an evidentiary hearing is

27  required if (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2)

28  the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to

                                            5

1   no relief.  United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004).  No hearing is necessary if

2   the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so

3   palpably incredible or patently frivolous as to warrant summary dismissal."  United States v.

4   McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996), cert. denied, 520 U.S. 1269 (1997).

5       B.  Jurisdiction and Waiver Of Post-Conviction Review

6       The right to appeal or to seek collateral relief may be waived in a plea or sentencing

7   agreement.  United States v. Portillo-Cano, 192 F.3d 1246, 1249 (9th Cir. 1999); United States v.

8   Abarca, 985 F.2d 1012, 1014 (9th Cir.), cert. denied, 508 U.S. 979 (1993).  Such a waiver is

9   enforceable if (1) the language of the waiver encompasses the defendant's right to review on the

10  grounds raised, and (2) the waiver was knowing and voluntary.  United States v. Jeronimo, 398

11  F.3d 1149, 1153 (9th Cir.), cert. denied, 546 U.S. 883 (2005).  A valid waiver of post-conviction

12  review deprives the court of jurisdiction to entertain an appeal or motion under § 2255.  United

13  States v. Vences, 169 F.3d 611, 613 (9th Cir. 1999) (valid waiver precludes appellate

14  jurisdiction); Washington v. Lampert, 422 F.3d 864, 869 (9th Cir. 2005), cert. denied, 547 U.S.

15  1074 (2006) (valid waiver precludes habeas jurisdiction).

16      "The sole test of a waiver's validity is whether it was knowingly and voluntarily made."

17  United States v. Anglin, 215 F.3d 1064, 1068 (9th Cir. 2000).  Waiver of the right to post-

18  conviction judicial review is thus unenforceable with respect to an ineffective assistance of

19  counsel ("IAC") claim implicating the voluntariness of the waiver itself.  Washington v. Lampert,

20  422 F.3d at 871 (waiver does not bar claim that sentencing stipulation was involuntary as the

21  result of counsel's coercion and misrepresentation of consequences).  Waivers of post-conviction

22  review "must 'stand or fall with the agreement of which they are a part.'"  Portillo-Cano, 192

23  F.3d at 1250 (quoting United States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995)).

24                          III.       DISCUSSION

25      The government contends that petitioner's waiver of § 2255 review in the sentencing

26  agreement bars this court's consideration of the motion.  ECF No. 94 (answer) at 15-18.

27  Petitioner argues that the waiver is unenforceable because it was not voluntary and was the result

28  of ineffective assistance of counsel.  ECF No. 97 (reply).  Because a valid waiver deprives the

1  court of jurisdiction, <u>Washington v. Lampert</u>, 422 F.3d at 869, this issue must be resolved at the

2  outset.

3     A.  <u>Voluntariness of Waiver</u>

4        1.  <u>Petitioner's Claims Do Not Implicate the Voluntariness of the Waiver</u>

5        The sentencing agreement in this case explicitly waived petitioner's right to file a motion

6  under 28 U.S.C. § 2255 challenging his sentence.  ECF No. 65 at 5-6.  Because the waiver by its

7  terms encompasses the claims raised here, it is enforceable if it was knowingly and voluntarily

8  made.  <u>Jeronimo</u>, 398 F.3d at 1153; <u>Anglin</u>, 215 F.3d at 1068.  Although petitioner argues in

9  conclusory terms that his waiver was involuntary as the result of ineffective assistance of counsel,

10  none of petitioner's IAC claims directly or indirectly implicate the voluntariness of the waiver

11  itself or the sentencing agreement of which it is a part.

12        Petitioner's first ground for relief alleges that trial counsel, Shari Rusk, unreasonably

13  advised petitioner to reject a plea offer that was extended in 2010.[4]  ECF No. 82 at 7.  Petitioner

14  alleges that this failure prejudiced him because his plea, entered in 2011 without the benefit of an

15  agreement, exposed him to a sentence far in excess of what he would have received under the

16  forfeited bargain.  This claim has no bearing on the validity of the subsequent wavier of collateral

17  attack contained in the 2012 sentencing agreement.  Ineffective assistance in a previous phase of

18  the case, regarding a distinct decision by the defense made under a distinct set of circumstances,

19  does not implicate the voluntariness of the sentencing agreement or waiver.  <u>Compare</u> <u>Jeronimo</u>,

20  398 F.3d at 1156 n. 4 (recognizing that waiver in plea agreement might not bar a § 2255 claim

21  that counsel unreasonably failed to advise regarding consequences of that plea, rendering both the

22  plea and attendant waiver involuntary).  Because petitioner's first claim alleges ineffective

23  assistance in relation to the 2010 decision to reject a plea offer, and does not suggest ineffective

24  assistance in relation to the 2012 decision to waive post-conviction review and agree to a 97

25  _____

26  [4]  Petitioner does not identify the plea offer by date, but describes it as an offer involving a guidelines range of 63-78 months, and attaches an unsigned and undated agreement consistent with his allegations. ECF No. 82 at 7, 12-27.  The government acknowledges that this offer was made, and provides documentation that it was sent to counsel on August 25, 2010 and remained open until September 24, 2010.  ECF No. 95-2 (email to Shari Rusk from AUSA Russell Carlberg, with attached proposed plea agreement).

1    month sentence, the claim does not affect the validity of the waiver.

2            Petitioner's other ineffective assistance claims all go to counsel's failure to challenge

3    specific matters in the Presentence Report ("PSR").  Ground Two alleges that counsel was

4    ineffective in failing to challenge nine alleged factual inaccuracies in the PSR.  ECF No. 82 at 8-

5    10.  The final PSR was issued on February 2, 2012, in light of the Sentencing Agreement that had

6    already been signed by the defendant and his counsel.  See PSR at 2, 3 at ¶ 2; ECF No. 65

7    (Sentencing Agreement) at 7.  At the sentencing hearing on March 9, 2012, defense counsel

8    confirmed that there were no objections to the PSR.  ECF No. 95-17 at 6.  Ground Two does not

9    implicate the validity of the sentencing agreement or the voluntariness of the waiver.  To the

10   extent petitioner contends that the alleged factual inaccuracies in the PSR led to improper

11   guidelines calculations, this claim merges with petitioner's final three claims.

12           Grounds Three, Four and Five involve counsel's failure to challenge the PSR's guidelines

13   calculations regarding certain offense level enhancements (for sophisticated means, role in the

14   offense, and abuse of trust, respectively).  ECF No. 82 at 10-11.  Petitioner does not directly

15   attack the sentencing agreement or contend that counsel rendered ineffective assistance in

16   negotiating it or advising him to accept it; he challenges only counsel's failure to dispute the

17   probation officer's Guidelines scoring.  However, the sentencing agreement contained

18   stipulations regarding sophisticated means, role in the offense, and abuse of trust.  Those

19   stipulations, which petitioner accepted by signing the agreement before the PSR was issued, and

20   in exchange for which he received a bottom of the guidelines recommendation (and sentence),

21   foreclose his claims of IAC in failing to object to the PSR.  For the same reason, these claims do

22   not imply the invalidity of the waiver.

23           Petitioner appears to believe that any assertion of ineffective assistance as grounds for

24   relief renders his waiver unenforceable.  That is not the case.  Where ineffective assistance

25   allegations implicate the validity of the waiver, the court can and must consider the merits of the

26   claim.  See Washington v. Lampert, 422 F.3d at 871 (waiver not enforceable as to claim that

27   counsel coerced petitioner's agreement to the sentencing stipulation and affirmatively misled him

28   about the consequences).  Where the allegations go to matters that do not implicate the validity of

1  the waiver, however, the waiver remains enforceable. See United States v. Cockerham, 237 F.3d

2  1179, 1187 (10th Cir. 2001) (collecting cases), cert. denied, 534 U.S. 1085 (2002). This approach

3  is consistent with the underlying principle that "[t]he sole test of a waiver's validity is whether it

4  was knowingly and voluntarily made." Anglin, 215 F.3d at 1068 (9th Cir. 2000). For all the

5  reasons explained above, the undersigned finds that none of petitioner's claims implicate the

6  voluntariness of his sentencing agreement. The waiver is therefore enforceable.

7          2.  The Waiver Was Voluntary

8          To the extent if any that petitioner has properly presented a claim or theory that the

9  sentencing agreement itself was involuntary, that assertion is belied by the record. See Blaylock,

10  20 F.3d at 1465 (summary adjudication appropriate where record conclusively demonstrates

11  petitioner not entitled to relief).

12         First, the voluntariness of a plea or sentencing agreement turns primarily on the

13  defendant's awareness of the agreement's consequences. See Brady v. United States, 397 U.S.

14  742, 748 (1970); Torrey v. Estelle, 842 F.2d 234, 235, 237 (9th Cir. 1988). Petitioner signed the

15  sentencing agreement with full knowledge of its stipulations regarding offense level adjustments

16  and resulting Guidelines range, which were explicitly set forth in that document (ECF No. 65 at

17  3-4) and which petitioner attested he had read and discussed with counsel.[5] He does not claim

18  otherwise here.

19         Second, petitioner attested to the voluntariness of the agreement in the agreement itself.[6]

20  He has presented no evidence, and makes no factual allegations, contrary to his representations in

21  the agreement that he had read it, understood it, and signed it freely and without inducement or

22

23  [5] Petitioner's signature on the agreement follows this statement: "I have read this Sentencing
    Agreement and carefully reviewed every part of it with my attorney. I understand it, and I

24  voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights
    with respect to the provisions of the sentencing Guidelines that may apply to my case. No other

25  promises or inducements have been made to me, other than those contained in this Sentencing
    Agreement. In addition, not one has threatened or forced me in any way to enter into this

26  Sentencing Agreement. Finally, I am satisfied with the representation of my attorney in this

27  case." ECF No. 65 at 7. Counsel also signed the agreement, stating that she had discussed it fully
    with her client. Id. at 6-7.

28  [6] See n. 8, supra.

1    coercion.

2           Third, petitioner said nothing at the sentencing hearing to indicate that the agreement he

3    had signed two months previously was not entered voluntarily.  See ECF No. 95-17.  The

4    Sentencing Agreement was not part of a plea bargain, so there had been no Rule 11 colloquy.

5    There is accordingly no finding of voluntariness by the trial judge on the record.  Petitioner,

6    however, did not challenge the terms of the agreement in open court, object to the Guidelines

7    scoring, or use his allocution to express surprise or dissatisfaction with the outcome.  Id.

8           Finally, petitioner's assertion that the agreement was involuntary as the result of

9    ineffective assistance is entirely conclusory.  He has identified no evidence and alleged no facts

10   that would demonstrate counsel induced his agreement to the sentencing deal by grossly

11   mischaracterizing the likely outcome.  See Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986).  He

12   has not demonstrated that counsel gave him any advice regarding the sentencing agreement that

13   was outside "the range of competence demanded of attorneys in criminal cases."  See Hill v.

14   Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

15   Accordingly, petitioner has failed to present even a prima facie case of an involuntary agreement

16   resulting from the ineffective assistance of counsel.

17          For these reasons, the undersigned finds that the waiver was voluntary and therefore is

18   enforceable.

19          B.  Advisement of Appeal Rights

20          At the conclusion of the judgment and sentencing hearing, the following exchange took

21   place:

22                   THE COURT:  If you wish to appeal this judgment today, you may
                     do so.  However, you must file your notice of appeal with the clerk
23                   of the court within 14 days of today in writing.  There's a fee for
                     that.  If you can't afford it, it will be waived.  That is, you don't
24                   have to pay it.  And if you want me to appoint an attorney to
                     represent you on appeal I'll do so at no initial cost to you.
25
                     Do you understand your appeal rights?
26
                     THE DEFENDANT:  Yes.
27
                     MR. CARLBERG:  You Honor, I may note for the record that at
28                   least in our sentencing agreement, he's waived appeal.  I know it's

1    not part of a Rule 11, but I wanted that on the record.  He signed
     and waived appeal.
2
     THE COURT:  Okay.  I think since it's not part of the Rule 11 plea,
3    I should advise. . .

4    MR. CARLBERG:  I think you're right, your Honor, but I just
     wanted to make that clear for the record.
5

6    ECF No. 95-17 at 14-15.

7           Petitioner suggests in his reply that Judge's Garcia's recitation of appeal rights negated his

8    waiver and restored his right to seek post-conviction relief.  The undersigned disagrees.

9           A waiver of appeal becomes unenforceable if the district judge advises of appeal rights

10   and the prosecutor fails to object, because those circumstances create a reasonable expectation

11   that the defendant may appeal notwithstanding his waiver.  See United States v. Felix, 561 F.3d

12   1036, 1040-41 (9th Cir.) (citing United States v. Buchanan, 59 F.3d 914 (9th Cir. 1995)), cert.

13   denied, 558 U.S. 901 (2009).  In considering the effect of a waiver that has been contradicted by a

14   district court's statements, the reviewing court must consider both the statements themselves and

15   the defendant's reasonable expectation about his rights, in light of all the circumstances.  United

16   States v. Arias-Espinosa, 704 F.3d 616, 618-19 (9th Cir. 2012).  Ambiguous or qualified advice

17   about the right to appeal does not negate a written waiver, even absent objection by the

18   prosecutor.  Id. at 619.

19          Here, in contrast to Felix, supra, the prosecutor responded to the advisement by promptly

20   bringing the waiver to the attention of the court and the defendant.  Judge Garcia acknowledged

21   the wavier, and indicated that some advisement was nonetheless appropriate in light of the fact

22   that the waiver was independent of the previous Rule 11 proceeding.  The references by the

23   prosecutor and judge to Rule 11 suggested, at most, that petitioner might retain a right to appeal

24   matters related to his change of plea.  Nothing in Judge Garcia's statement expressly or impliedly

25   negated the waiver as it applied to petitioner's sentence or matters addressed in the sentencing

26   agreement.  Nor did anything in Judge Garcia's statement imply that petitioner retained a right to

27   bring a § 2255 motion attacking his sentence.

28          In determining whether the judge's statement created a reasonable expectation of a right to

1   appeal, the Ninth Circuit has looked to the procedural history of the case as a whole.  See Arias-

2   Espinosa, 704 F.3d at 619 (considering the circumstances of the change of plea hearing before the

3   magistrate judge, the findings and recommendations that reported a voluntary waiver of appeal,

4   and the district court's adoption of the findings).  Here, events before and after the advisement

5   weigh against a finding that petitioner had a reasonable expectation that his right to bring a §

6   2255 motion had been revived.  Petitioner's written waiver clearly distinguished between direct

7   appeal and § 2255 review, and separately waived both.  Judge Garcia's advisement was limited to

8   the right to appeal the judgment.  His explanation for the advisement emphasized the difference

9   between defendant's guilty plea, which had not been accompanied by a contemporaneous waiver,

10  and the sentencing proceeding, which had.  At most, Judge Garcia's statement implied that

11  petitioner retained a right to direct appeal.  The fact that petitioner subsequently filed a direct

12  appeal, ECF No. 71, suggests that this may have been his understanding – which does not help

13  him here.  Moreover, the fact that petitioner voluntarily dismissed his appeal as barred by the

14  waiver, ECF No. 95-19, reflects his recognition that any such understanding was not reasonable.

15      For all these reasons, the qualified advisement of appellate rights did not negate

16  petitioner's waiver of a § 2255 motion attacking his sentence.

17                                    CONCLUSION

18      Because petitioner's claims do not implicate the validity of the sentencing agreement, and

19  because petitioner's wavier of post-conviction review was voluntary and enforceable, the waiver

20  bars petitioner's § 2255 motion.  This court therefore lacks jurisdiction to consider the merits of

21  the claims.

22      Accordingly, IT IS RECOMMENDED that petitioner Stephen M. Kraut's motion under

23  28 U.S.C. § 2255 be DISMISSED.

24      These findings and recommendations are submitted to the United States District Judge

25  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

26  after being served with these findings and recommendations, any party may file written

27  objections with the court and serve a copy on all parties.  Such a document should be captioned

28  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1  shall be served and filed within fourteen days after service of the objections.  The parties are

2  advised that failure to file objections within the specified time may waive the right to appeal the

3  District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: October 30, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

13